# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

Peter D'Amelio

v.                                              Civil No. 08-cv-500-JL

Richard M. Gerry, et al.

## REPORT AND RECOMMENDATION

Before the Court is Peter D'Amelio's complaint (document nos. 1 & 6)[1]. This action is brought pursuant to 42 U.S.C. § 1983, alleging that defendants, Richard Gerry, the Warden of the New Hampshire State Prison ("NHSP"), and William Wrenn, the Commissioner of the New Hampshire Department of Corrections ("NHDOC"), have violated D'Amelio's federal constitutional rights. The matter is before me for preliminary review to determine, among other things, whether or not this action states any claim upon which relief might be granted. See 28 U.S.C. § 1915A; United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

_____

[1]D'Amelio has filed a complaint (document no. 1) and a motion to amend his complaint, which has been docketed as an addendum to the complaint (document no. 6). The Court will consider both of these documents to be the complaint in this matter for all purposes.

## Standard of Review

Under this Court's local rules, when an incarcerated
plaintiff commences an action pro se and in forma pauperis, the
magistrate judge is directed to conduct a preliminary review.  LR
4.3(d)(2).  In conducting the preliminary review, the Court
construes pro se pleadings liberally, however inartfully pleaded.
See Erickson v. Pardus, 551 U.S. 89, ___, 127 S. Ct. 2197, 2200
(2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and
Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se
pleadings liberally in favor of the pro se party).  "The policy
behind affording pro se plaintiffs liberal interpretation is that
if they present sufficient facts, the court may intuit the
correct cause of action, even if it was imperfectly pled."  See
Castro v. United States, 540 U.S. 375, 381 (2003) (noting that
courts may construe pro se pleadings so as to avoid
inappropriately stringent rules and unnecessary dismissals of
claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).
All of the factual assertions made by a pro se plaintiff and
inferences reasonably drawn therefrom must be accepted as true.
See id.  This review ensures that pro se pleadings are given fair
and meaningful consideration.

2

Background

Peter D'Amelio is an inmate in the custody of the NHDOC. At the time the relevant events in the complaint are alleged to have occurred, D'Amelio was housed at the NHSP.

On June 3, 2008, D'Amelio pleaded guilty to a disciplinary infraction. In addition to sanctions imposed pursuant to the guilty disciplinary finding, the incident caused D'Amelio to be reclassified from a C-4 to a C-5, or maximum custody, security status. On June 5, 2008, upon his reclassification, D'Amelio was transferred to the NHSP's Secure Housing Unit ("SHU"), where C-5 inmates are ordinarily housed.

On July 3, 2008, Cpl. Demio gave D'Amelio a "5-Day Notice," advising D'Amelio that, within five days, D'Amelio had to provide an address to which prison officials could ship his property that he was not authorized to have in SHU. If D'Amelio failed to provide an address, the Notice warned, the property would be destroyed. D'Amelio stated to Demio that he intended to appeal the Notice, that he was therefore not going to provide an address, and that the prison would have to retain his property during the appeals process.

3

On July 4, 2008, D'Amelio filed an appeal of the 5-Day Notice to the SHU Unit Manager, Normand Marquis. Marquis denied the appeal. On July 9, 2008, D'Amelio appealed Marquis' decision to Gerry. D'Amelio states that he never received a response.

On July 7 and 9, 2008, D'Amelio sent an Inmate Request Slip ("IRS") to Property Officer Nahodil asking for a copy of the inventory of his personal property that was taken when he was upgraded to C-5, as he had not received one. Nahodil declined to provide him with a copy, and referred him to Offender Records.

On August 5, 2008, D'Amelio spoke with Lt. Whitten and requested that she obtain a grievance form for him. Whitten suggested that D'Amelio send an IRS to Mjr. Fouts before filing a grievance with Gerry.

On August 7, 2008, D'Amelio sent an IRS to Mjr. Fouts regarding the allegedly improper taking and sending out of his property. D'Amelio stated that the method of dealing with the property of inmates who are placed on C-5 status conflicts with NHSP Policy and Procedure Directive ("PPD") 9.02(IV)(J)(3)(e), which states that property will be retained by the prison and reissued to the inmate as appropriate, presumably upon a lowering

4

of the inmate's security status.  Fouts forwarded D'Amelio's IRS
to Capt. Hardy who denied the request.

On August 12, 2008, D'Amelio wrote a grievance to Gerry
seeking the return of his property.  D'Amelio, in the grievance,
explained the alleged violation of PPD 9.02(IV)(J)(3)(e)
occasioned by the current NHSP practice of dealing with C-5
property.  D'Amelio also complained that SHU was not complying
with the prison's own requirement that a list of property
authorized on that unit be maintained.  Gerry denied the
grievance.  On August 26, 2008, D'Amelio appealed the denial of
his grievance to Wrenn.  On September 2, 2008, Christopher Kench,
who works in Wrenn's office, denied D'Amelio's grievance, stating
that the prison does not store property for C-5 SHU inmates.

On both September 7 and 10, 2008, D'Amelio sent IRSes to
Nahodil and asked him what property was listed on his 5-Day
Notice, as he had not received a copy of his 5-Day Notice from
Demio.  Nahodil responded, listing some of D'Amelio's property,
including "excessive canteen."  D'Amelio disputes that his
canteen was excessive.

D'Amelio filed a claim with the New Hampshire Board of
Claims, requesting compensation for the property he says was

5

improperly seized by prison officials and not returned. On
September 19, 2008, D'Amelio received notice that the Board of
Claims had denied his claim.

On October 7, 2008, D'Amelio sent an IRS to Gerry,
complaining that although inmates are generally allowed to have
radios, televisions or stereos as C-5 inmates at SHU, he had not
been permitted to keep his television when he was transferred to
SHU. D'Amelio referred in this grievance to N.H. Admin Code Cor.
("COR") 301.09(o)[2] which states that an inmate who is "not in
punitive segregation shall be allowed to have in [his] cell[] a
television or radio or stereo . . . ," and that additional items
consistent with security will be authorized for C-5 inmates
"consistent with security predicated on their good behavior."
Gerry responded to D'Amelio that he did not meet the criteria for
permission to have a television in SHU. Presumably, Gerry was
referring to COR 301.09(i) which states that maximum security
prisoners "whose security status permits," may have certain items
at SHU. Gerry's reference to criteria, as well as COR 301.09(i)
implies that allowance of certain property items at SHU is
discretionary, and dependant on an inmate's good behavior, and

[2]COR 301.09 sets out the standards of operation and
management for maximum custody prisoners at the NHDOC.

6

that, as D'Amelio's reclassification to C-5 status was based on

misconduct, he did not qualify for in-cell access to the property

he sought.  D'Amelio then sent an IRS to Kench on the same issue.

D'Amelio conceded in his communication with Kench that the

provision of certain items in SHU was dependent on security

concerns and the good behavior of an inmate, but maintained that

his television was not one of those items.

Discussion[3]

I.   Section 1983 Claims

Section 1983 creates a cause of action against those who,

acting under color of state law, violate federal constitutional

or statutory law.  See 42 U.S.C. § 1983[4]; Parratt v. Taylor, 451

---

[3]The claims as identified herein will be considered for all
purposes to be the claims raised in the complaint.  If D'Amelio
disagrees with this identification of the claims, he must do so
by objecting to this Report and Recommendation, or by properly
moving to amend his complaint.

[4]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law . . . .

U.S. 527, 535 (1981) (overruled on other grounds by Daniels v.
Williams, 474 U.S. 327, 330-331 (1986)); Wilson v. Town of
Mendon, 294 F.3d 1, 6 (1st Cir. 2002). In order for a defendant
to be held liable under § 1983, his or her conduct must have
caused the alleged constitutional or statutory deprivation. See
Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v.
Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997). Because
D'Amelio's claims allege violations of federal constitutional law
effected by state actors, his suit arises under § 1983.

II.  Property Claims

    D'Amelio claims that the taking of his property, as well as
the demand that it be removed from prison, violates his Fourth
Amendment right not to have his property unreasonably seized from
him.  D'Amelio also asserts that his Fourteenth Amendment due
process rights were violated by the Prison improperly depriving
him of his property. I find that both of these claims amount to
assertions by D'Amelio that he was unconstitutionally deprived of
his property, and that both may therefore be classified as
property claims.

    A.  Fourteenth Amendment

    In order to state a Fourteenth Amendment due process claim

8

for an improper deprivation of his property, D'Amelio must allege
a constitutionally grounded liberty interest in that property.
None of the property itself gives rise to a federally protected
right, as an inmate has no right to have a television or to have
food items in excess of what is necessary to provide him with
adequate nourishment to live. "The Constitution 'does not
mandate comfortable prisons,' but neither does it permit inhumane
ones." Helling v. McKinney, 509 U.S. 25, 31 (1993) (quoting
Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). The Eighth
Amendment imposes duties on prison officials to ensure that
inmates receive adequate food, clothing, shelter, and medical
care, and must take reasonable measures to guarantee the safety
of the inmates. See Farmer v. Brennan, 511 U.S. 825, 832-33
(1994); Helling, 509 U.S. at 31-32; Washington v. Harper, 494
U.S. 210, 225 (1990); Hudson v. Palmer, 468 U.S. 517, 526-527
(1984); Estelle, 429 U.S. at 103. Conditions of confinement
which do not lead to deprivations of essential food, medical
care, or sanitation do not amount to an Eighth Amendment
violation. See Williams v. McWilliams, 20 F.3d 465 (5th Cir.
1994) (citing Rhodes, 452 U.S. at 340). The fact that D'Amelio
may be required to purchase these items again in the future, if

9

he is returned to a security level where the items are authorized, is a simple claim of property loss occasioned by the failure of the prison officials to follow established policy.

Claims alleging the theft, damage, loss or other misappropriation of property are not actionable under 42 U.S.C. § 1983 where, as here, there is an adequate post-deprivation state remedy available. Hudson, 468 U.S. at 533; see N.H. Rev. Stat. Ann. §§ 541-B:9(II) & (IV), and 541-B:14 (providing a post-deprivation means of recouping property loss attributable to the state). Here, D'Amelio utilized this process when he sought recompense from the Board of Claims. Although D'Amelio's claim was denied, there is no indication that the procedure was inadequate to resolve D'Amelio's claims. See id. Accordingly, I find that D'Amelio's Fourteenth Amendment claim alleging the loss of his compensable property should be dismissed as not cognizable as a federal cause of action.

B. Fourth Amendment Claim

An inmate, due to the nature of incarceration, does not enjoy a Fourth Amendment right to be protected from unreasonable seizures of personal effects in his jail cell. See Soldal v. Cook County, 506 U.S. 56, 65 (1992) (citing Hudson, 468 U.S. at

10

528 n.8 (O'Connor, J., concurring) ("Prison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests," although the items seized may not necessarily be destroyed with impunity.)). As to any personal paperwork taken, D'Amelio has failed to identify any reason why mailing it to someone who can retain it for him outside of the prison walls, as opposed to possessing it in the prison, deprives him of any right that is enforceable in a prison context. Prison officials advised D'Amelio that his paperwork, television, and excessive canteen, along with other items, were not authorized property at SHU. It takes little imagination to understand that the removal of some personal property from an inmate's possession when an inmate is transferred to a higher security status may serve a variety of legitimate institutional interests, including, but not limited to, the deprivation of privileges as a punitive measure and space considerations in the new unit. I find that D'Amelio has failed to state a Fourth Amendment right that has been violated by the actions of prison officials, and I recommend dismissal of this claim.

## Conclusion

As I find that D'Amelio has failed to state any claim upon which relief might be granted, I recommend that this action be denied in its entirety. Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

Justo Arenas
United States Magistrate Judge

Date: March 3| , 2009

cc: Peter D'Amelio, pro se

12